UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: COPPERAS CREEK, LLC,                              No. 11-12-11839 JA
       a New Mexico Limited Liability Company,

Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on CO Acquisition Property III, LLC's Motion to Dismiss Petition for Bad Faith and for Failure to File Schedules of Assets and Liabilities and Statement of Financial Affairs ("Motion to Dismiss"). *See* Docket No. 16. Debtor Copperas Creek, LLC, a New Mexico Limited Liability Company ("Copperas Creek" or "Debtor") opposes the Motion to Dismiss. *See* Docket No. 36. Also before the Court is the Debtor's request for an extension of time to file its Schedules and Statement of Financial Affairs.[1] The Court commenced an evidentiary hearing on the Motion to Dismiss on July 11, 2012 and concluded the hearing on July 20, 2012.[2] After consideration of the Motion to Dismiss and the request for extension of time to file Schedules and Statement of Financial Affairs in light of the evidence presented at the final hearing and the arguments of counsel, the Court finds that the Motion to Dismiss should be denied and the request for extension of time should be granted. The evidence presented to the Court fails to establish that Copperas Creek filed its petition in bad faith. In addition, although Debtor failed to file its Schedules and Statement of Financial Affairs

---

[1] *See* Order Regarding Debtor's Request to Extend the Time to File Schedules and Statement of [Financial] Affairs and for Other Relief directing that the proposed stipulated order between the Debtor and the United States Trustee extending the time to file Schedules and Statement of Financial Affairs will be treated as a motion requesting the relief contained in the proposed order - Docket No. 24.

[2] Pursuant to 11 U.S.C. § 1112(b)(3), the Court is required to decide a motion to dismiss "not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph." 11 U.S.C. § 1112(b)(3). The movant was not able to complete the presentation of its evidence at the hearing on July 20, 2012 in the time estimated by the parties so the Court continued the hearing to July 20, 2012.

within the extended time requested in its motion, under the circumstances of this case, such failure does not constitute cause for dismissal.

## FACTS

Copperas Creek filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 9, 2012. The debtor's principal, Jeannie Duncan, is the sole member and sole officer of Copperas Creek. Copperas Creek is a real estate holding company that does not have any employees or otherwise conduct business. Certain real property located at 5401 San Diego Road NE and 5301 San Diego Road NE (together, the "Property") constitutes all or substantially all of the Debtor's assets. A commercial building is situated on 5401 San Diego Road NE. There are two tenants in the commercial building located at 5401 San Diego Road NE. The tenants are businesses owned directly or indirectly by Ms. Duncan. Copperas Creek has not collected rent from its tenants in the last year. The real property located at 5301 San Diego Road NE is undeveloped property.

In 2007, Copperas Creek executed a Promissory Note ("Note") in favor of First Community Bank in the principal amount of $1,194,000.00. The Note is secured by a Mortgage on the Property and by a lien against all leases for the Property and rents. Jeannie Duncan executed a personal Commercial Guaranty of the Note and loan obligations of Copperas Creek relating to the Property.

At some time after Copperas Creek executed the loan documents in favor of First Community Bank, the Federal Deposit Insurance Corporation caused the closure of First Community Bank. In September of 2011, CO Acquisition Property III ("CO Acquisition") purchased the loan secured by the Property, including the Note, Mortgage, and commercial guaranty, at a discount from the bank that acquired the assets of First Community Bank. CO

Acquisition is in the business of purchasing distressed debt. CO Acquisition's business model includes a quick liquidation of collateral it acquires to maximize the return to its investors. Matt Walsh, an asset manager for Republic Financial Corporation in Aurora Colorado, of which CO Acquisition is an affiliate, testified that CO Acquisition is in the business of purchasing distressed loans and typically purchases loans at a discount at an average "somewhere south of fifty percent" for all purchased loans.

CO Acquisition is, by far, Copperas Creek's largest creditor. The only other creditors listed in Copperas Creek's schedules are PNM and the Bernalillo County Treasurer. Ms. Duncan testified that the debt owing to PNM for utility service is less than $1,000.00. The debt owing to Bernalillo County Treasurer is for delinquent property taxes on the Property in the amount of 46,298.80. *See* Amended Schedule D – Docket No. 29. At trial, the parties agreed that Jeannie Duncan appears to have an unscheduled contingent claim against Copperas Creek based on her personal guaranty of Copperas Creek's indebtedness to CO Acquisition. Ms. Duncan has not filed a proof of claim in the bankruptcy case. A claims bar date has not been set.

CO Acquisition initiated foreclosure proceedings against Copperas Creek in state court prior to the filing of the bankruptcy petition. A hearing on CO Acquisition's motion to appoint Roger Cox & Associates Property Management LLC as receiver was scheduled in the state court foreclosure action on May 10, 2012. Copperas Creek filed its bankruptcy petition one day before the scheduled hearing date. Prior to the filing of the bankruptcy, Ms. Duncan and CO Acquisition had been negotiating in an attempt to reach a settlement, but negotiations ultimately failed. Ms. Duncan testified that she caused Copperas Creek to file its bankruptcy petition because she believed she "was left with no other choice."

Copperas Creek did not file its Schedules and Statement of Financial Affairs with its petition. On May 24, 2012, the Debtor filed a Motion for Enlargement of Time to File Schedules ("Motion for Extension of Time"). *See* Docket No. 13. The Motion for Extension requested an extension of time until May 30, 2012 to file the Debtor's Statement of Financial Affairs and Schedules. As of the date of the first meeting of creditors, held June 11, 2012, the Debtor had not filed its Schedules or Statement of Financial Affairs. The United States Trustee conducted the meeting of creditors on June 11, 2012, and then adjourned the meeting to June 14, 2012. At the meeting of creditors held June 11, 2012, the United States Trustee agreed on the record to an extension of time for the Debtor to file its Schedules and Statement of Financial Affairs until June 14, 2012 at 8:00 a.m. CO Acquisition attended the meeting of creditors on June 11, 2012 and extensively questioned the Debtor's designated representative, and attended the continued meeting held on June 14, 2012. *See* Docket No. 19. The Debtor and the United States Trustee submitted a proposed stipulated order extending the deadline for the Debtor to file its Schedules and Statement of Financial Affairs to June 13, 2012, which the Court determined should be treated as a motion to extend the time, subject to notice and a hearing, in light of the pending Motion to Dismiss filed by CO Acquisition. *See* Order Regarding Debtor's Request to Extend Time to File Schedules and Statement of Affairs and for Other Relief - Docket No. 24. The Debtor filed an Amended Voluntary Petition, Schedules and Statement of Financial Affairs on June 13, 2012. *See* Docket Nos. 19 and 21.

<u>The Value of the Property</u>

Copperas Creek valued the Property in its schedules as follows: Mixed Use Office and Warehouse Building located at 5401 San Diego (Lot 29) – $1,200,000.00; Vacant Land located at 5301 Sand Diego Road NE (Lot 30) - $275,000.00. Prior to the filing of the bankruptcy case,

4

Copperas Creek listed the Property for sale with a commercial real estate broker in February of 2012. The listing price is for the sale of the Property is $1,544,636.00. The commercial building located at 5401 San Diego is priced at $94.00 per square foot for a total sales price of $1,237,980.00 and the vacant land located at 5301 San Diego is priced at $8.00 per square foot for a total sales price of $306,656.00. Maestas & Ward is the listing agent for the Property and has agreed to a 6% commission on the sale of the Property. As currently marketed, the vacant land can be sold separately from the commercial property.

Maestas & Ward is a competent, experienced real estate brokerage firm that has sold numerous commercial properties in the Albuquerque area. Martha Carpenter, a top producing commercial real estate broker at Maestas & Ward, is currently acting as sales broker and listing agent for the Property. In setting a sales listing price for the Property, Ms. Carpenter looked at similar properties in the same vicinity that are currently listed for sale. She believes that the Property's location, twenty-four foot ceilings, six bay doors, easy access, and immaculate condition add to the value of the Property. The listing price for the Property is within range of the listing prices for other properties in the same area that Ms. Carpenter reviewed when setting the listing price for the Property. Copperas Creek has not received any written offers to purchase the Property at the listing price or any other price, but Ms. Carpenter reported that she continues to actively show the Property. In her opinion, she believes that the Property can be sold at the current listing price in a reasonable time, but that it could take an additional six months to sell the Property. In her experience, she generally markets a property for at least six months before reevaluating the listing price. As of the date of the hearing, the Property has been on the market for nearly six months. At some point, if the Property does not sell, the listing price will need to be reassessed.

Brian Anderson, Chief Operating Officer and qualifying broker for Roger Cox & Associates Property Management, LLC, testified that in his opinion a reasonable listing price and market value for the Property is $925,000.00. Mr. Anderson holds a Certified Commercial Investment Member (CCIM) designation, but it is not a qualified appraiser. Mr. Anderson established his estimated listing price and market value by reviewing comparable properties that have sold within the six to twelve month period preceding the date of his report.[3] He obtained the sales information by contacting one MAI certified appraiser and requesting a list of sold properties. Mr. Anderson testified that he made adjustments to the comparable sales, but did not specify what adjustments he made to the comparable properties in reaching his estimate of value for the Property. In fact, the comparable sales properties he relied on were not very similar to the Property, either in size, location, or age, and differed from the Property in other respects. His report did not specify the statistical adjustments he made in certain feature categories in reaching his assessment of a reasonable value for the Property. Nor did Mr. Anderson physically inspect the Property on the inside or any of the properties he used as comparables. In his opinion, at the current listing price, the Property is unlikely to sell for at least eighteen months, but at his suggested listing price of $925,000, the Property should sell within six months.

### The Amount of CO Acquisition's Claim

Copperas Creek scheduled CO Acquisition's claim as a secured claim in the amount of $1,300,000.00. *See* Amended Schedule D – Docket No. 29. Copperas Creek has not made any payments on the loan that CO Acquisition acquired since June of 2011. Ms. Duncan testified that Copperas Creek made payments on the loan before CO Acquisition acquired the loan that have not been credited to the loan, and estimates that the amount of the debt to CO Acquisition is

---

[3] New Mexico is a nondisclosure state, meaning that sales agents and real estate brokers are not required to publicly disclose prices for closed property sales transactions. Brokers generally obtain information about closed commercial real estate sale transactions in the Albuquerque area by contacting the MAI certified appraisers in the area.

"in the neighborhood" of $1,300,000.00.  CO Acquisition presented a loan history it obtained when it purchased the loan but did not present evidence about its accuracy.  CO Acquisition has begun to charge interest at the default rate of 9.5%.  At the default rate, the loan accrues monthly interest in the approximate amount of $10,400.00, assuming an unpaid principal balance of $1,312,948.38.  CO Acquisition has not filed a proof of claim in the Debtor's bankruptcy case.

DISCUSSION

Dismissal of a Chapter 11 bankruptcy case is governed by 11 U.S.C. § 1112(b).  The Court is generally required to dismiss or convert a case under this section upon a finding of "cause."  *See* 11 U.S.C. § 1112(b)(1) ("on request of a party in interest, and after notice and a heating, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate . . . ")(emphasis added).[4]  Section 1112(b) identifies sixteen non-exhaustive examples of what constitutes "cause" to dismiss or convert a Chapter 11 case.[5]  Whether "cause" exists to dismiss or convert a Chapter 11 case is a threshold issue.  *In re Melendez Concrete Inc.,* 2009 WL 2997920, *3 (Bankr.D.N.M. Sept. 15, 2009).   "Cause" includes, but is not limited to, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "gross mismanagement of the estate," and "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter."   11 U.S.C. § 1112(b)(4)(A), (B) and (F).  A debtor's bad faith in filing a petition can constitute "cause" for dismissal under 11 U.S.C. § 1112(b).  *See,*

---

[4] An exception to the requirement that the case be dismissed upon a finding of cause is contained in 11 U.S.C. § 1112(b)(2).  That exception is not at issue here.
[5] *AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.),* 360 B.R. 398, 401 (Bankr.D.N.H. 2007)("The list [contained in § 1112(b)(4)] is not exhaustive . . . ); *In re Whetten,* __ B.R. __, 2012 WL 2018259, *1 (Bankr.D.Colo. 2012)(acknowledging that "[t]he list is illustrative, not exhaustive.").  *See also Frieouf v. United States (In re Frieouf),* 938 F.2d 1099, 1102 (10th Cir. 1991)(stating that "[s]ection 1112(b) provides a nonexhaustive list of grounds upon which a bankruptcy court may dismiss a Chapter 11 case for 'cause.'").

7

*In re First Assured Warranty Corp.,* 383 B.R. 502, 543 (Bankr.D.Colo. 2008)(acknowledging that "[a]lthough a debtor's bad faith in filing a petition is not an enumerated ground for dismissal under § 1112(b), courts have overwhelmingly held that proof of such an allegation may be 'cause' for dismissal.")(citing *Frieouf,* 938 F.2d at 1105).[6]

The party requesting dismissal or conversion of a Chapter 11 case under 11 U.S.C. § 1112(b) bears the burden of establishing cause by a preponderance of the evidence. *In re ARS Analytical, LLC,* 433 B.R. 848, 861 (Bankr.D.N.M. 2010)(citations omitted).[7] CO Acquisition's sole grounds for dismissal are that the Debtor filed its bankruptcy case in bad faith and failed to timely file its Schedules and Statement of Financial Affairs. When "cause" is premised on a bad faith filing, if the movant establishes a prima facie case, as CO Acquisition has done, the debtor must come forward with evidence that the bankruptcy filing serves a legitimate bankruptcy purpose and was filed in good faith.[8]

In determining whether a Chapter 11 petition was filed in bad faith, courts have identified the following non-exclusive relevant factors: (i) whether the petition serves a valid bankruptcy purpose such as by preserving a going concern or maximizing the value of the debtor's estate; (ii) whether the petition is filed merely to obtain a tactical litigation advantage; (iii) whether the

---

[6]*See also, In re Lee,* 467 B.R. 906, 917 (6th Cir. BAP 2012)(stating that "it is well-settled in the Sixth Circuit that a debtor's bad faith in filing a chapter 11 may serve as cause for dismissal under §1112(b)(1).")(citations omitted); *AmeriCERT,* 360 B.R. at 401 (acknowledging that "a case may be dismissed for other causes, such as bad faith, or if the petition does not serve a bankruptcy purpose.")(citations omitted); *In re Pacific Rim Investments, LLP,* 243 B.R. 768, 771(D.Colo. 2000)("a Chapter 11 Petition must be filed in good faith, and if not, dismissal of the case is an appropriate remedy.")(citing *Udall v. FDIC (In re Nursery Land Dev. Inc.),* 91 F.3d 1414 (10th Cir. 1996)).
[7]*See also, Lee,* 467 B.R. at 917 ("The party seeking dismissal of a case under §1112(b) must demonstrate a debtor's bad faith by a preponderance of the evidence.")(citing *Alt v. United States (In re Alt),* 305 F.3d 413, 420 (6th Cir. 2002)); *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir. 1994)("Where a motion to dismiss for cause is opposed, the movant bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of the debtor's bankruptcy case.")(citations omitted).
[8]*Cf. In re Fox,* 232 B.R. 229, 233 (Bankr.D.Kan. 1999)(observing that "when lack of good faith is raised as a basis for dismissal for cause, the debtor bears the burden of proving that the filing was made in good faith.")(citing *Stage I Land Co. v. United States,* 71 B.R. 225, 229 (D.Minn. 1986)); *Lee,* 467 B.R. at 918 (observing that "[a] debtor with no current income and whose prospects for future income are 'tentative at best' will have difficulty demonstrating that he has any good faith ability to effectuate a plan of reorganization under chapter 11.")(citation mitted).

8

debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation; (iv) whether it is a single asset case, (v) whether there are one or a very few unsecured creditors, (vi) whether there is no ongoing business or employees; (vii) whether the pre-petition conduct of the debtor has been improper; and (viii) whether the case is filed to evade one or more court orders.[9] Stated another way, the presence of one or more of the following factors can support a finding that a Chapter 11 debtor filed its petition in bad faith:

> (1) the debtor has only one asset; (2) the debtor has only one creditor; (3) the debtor acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; (4) the debtor was revitalized on the eve of foreclosure to acquire the insolvent property; (5) the debtor has no ongoing business or employees; (6) the debtor lacks a reasonable possibility of reorganization; and (7) the Chapter 11 filing stopped the foreclosure.
>
> *First Assured Warranty,* 383 B.R. at 543-544 (citations omitted).

No single factor is determinative, and the weight given to each factor will necessarily vary with the facts and circumstances of each case.[10] Whether a bankruptcy petition was filed in bad faith "requires the court to consider the totality of circumstances and any conceivable list of factors is not exhaustive nor does one factor create a *per se* test." *In re Sydnor,* 431 B.R. 584, 594 (Bankr.D.Md. 2010)(citation omitted).[11] Whether dismissal for bad faith is warranted falls within the Court's sound discretion. *See Squires Motel, LLC v. Gance,* 426 B.R. 29, 34 (N.D.N.Y. 2010)("a dismissal for bad faith . . . involves a bankruptcy court's exercise of

---

[9] *See In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 122 (3rd Cir. 2004)(applying one or more of the factors); *In re Nursery Land Development, Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996)(same); *Trident Associates Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Associates Ltd. P'ship)*, 52 F.3d 237, 130 (6th Cir. 1995) (same); *Phoenix Piccadilly Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988)(same).

[10] *Melendez Concrete,* 2009 WL 2997920 at *4 (citing *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983)).

[11] *See also, In re Marshall,* 298 B.R. 670, 681 (Bankr.C.D.Cal. 2003)(the court's analysis of whether the debtor filed its bankruptcy petition in bad faith "is based on the totality of the circumstances, and not a bright line rule.").

9

equitable discretion")(citing *In re First Conn. Consulting Group, Inc.,* 254 Fed.Appx. 64, 68 (2nd Cir. 2007)).

Several of the objective factors set forth above weigh in favor of finding that Copperas Creek filed this bankruptcy case in bad faith. For example, Copperas Creek has no business operations and no business employees. Copperas Creek has only one scheduled unsecured creditor and only three scheduled creditors in total. The petition was filed on the eve of the hearing in state court to appoint a receiver for the Property. The Property is Copperas Creek's only significant asset. The bankruptcy case essentially involves a two party dispute between Copperas Creek and CO Acquisition.

Nevertheless, the Court finds that the Debtor did not commence its bankruptcy case in bad faith. Copperas Creek did not file its bankruptcy case as a single asset debtor and there has been no determination by the Court whether this bankruptcy case constitutes a single real estate asset case. The state court foreclosure action has not proceeded through judgment, and was pending for only a couple of months before Copperas Creek commenced its bankruptcy case. The bankruptcy case was not motivated by malice and was not filed simply for delay.

Importantly, the bankruptcy case serves a legitimate bankruptcy purpose. Ms. Duncan testified that her intended objective for the bankruptcy case is to sell the Property and pay CO Acquisition in full. She would like to keep her other businesses in the Property as tenants, or move to a smaller space. CO Acquisition's objective is also to sell the Property, but its business model is to market properties for quick sale. The orderly liquidation of the bankruptcy estate by a debtor in possession to maximize value serves a legitimate bankruptcy purpose. If Copperas Creek can sell the Property at a substantially higher price than a state court receiver and pay CO Acquisition, it will eliminate or minimize Ms. Duncan's liability on her personal guaranty. Ms.

Duncan's personal guaranty of Copperas Creek's obligations to CO Acquisition gives her a contingent claim against the bankruptcy estate. Thus by attempting to sell the Property at a maximum value, Copperas Creek benefits the estate and its creditors.

The Debtor listed the Property for sale with a competent broker before filing the bankruptcy case and in good faith established the listing price in consultation with a licensed broker. The broker is actively showing the Property. Neither party presented sufficient evidence to support a finding by the Court as to the current value of the Property. At most, the Court can find that the Property is not worth *more* than the current listing price. If the Property sells for at or near the listing price, Copperas Creek will be able to pay CO Acquisition all or the majority of its claim depending on how long it takes to sell the Property. An orderly liquidation with the goal of maximizing value constitutes a valid bankruptcy purpose. *See In re Jartran, Inc.,* 886 F.2d 859, 867 (7th Cir. 1989)(acknowledging that liquidating Chapter 11 plans are permissible under the Bankruptcy Code if they are filed in good faith); *First Assured Warranty,* 383 B.R. at 544 (the fact that the debtor had no reasonable likelihood of rehabilitation through reorganization was not determinative as to whether the debtor filed its case in bad faith, since the debtor anticipated filing a liquidating plan).

Because the Debtor's bankruptcy case has been pending for fewer than three months, dismissal at this stage in the case is premature. "Liquidation under the control of the debtor has been determined to be sufficient to withstand a request for dismissal or conversion under § 1112(b)." *First Assured Warranty,* 383 B.R. at 544 (citing *In re Western Pac. Airlines, Inc.,* 218 B.R. 590, 595 (Bankr.D.Colo. 1998)). Copperas Creek's motivation to maximize the value of the Property in order to pay CO Acquisition and minimize Ms. Duncan's personal liability on her guaranty serves a valid bankruptcy purpose. *Cf. Melendez Concrete,* 2009 WL 2997920 at *4

11

(wherein the debtor's principals were motivated to maximize value as a result of personal guarantees and the court found that the debtor did not file the bankruptcy case in bad faith).

Furthermore, while "bad faith" can serve as grounds for relief from the stay as well as dismissal,[12] a motion to dismiss is not a substitute for a motion for relief from the automatic stay. A lack of equity in the Property is not sufficient in and of itself to find that the bankruptcy case was filed in bad faith. Nor is an inability to confirm a reorganization plan under which the debtor continues to operate a business mandate a finding that a debtor filed its petition in bad faith.

### The Debtor's Tardy Filing of its Statement of Financial Affairs and Schedules

Finally, the Debtor's failure to file its Statement of Financial Affairs and Schedules with the petition or within the extended period that the Debtor requested in its own motion is insufficient grounds to dismiss the Debtor's bankruptcy case. Certainly the Debtor should have filed its Statement of Financial Affairs and Schedules within the time frame set forth in the Bankruptcy Rules or a court order extending the time. But because the Debtor reached an agreement with the United States Trustee in connection with the continued meeting of creditors, and considering all of the facts and circumstances of this case,[13] the Court concludes that the Debtor's failure does not rise to the level of "cause" that would require dismissal under 11 U.S.C. § 1112(b).

---

[12] *See In re Éclair Bakery Ltd.,* 255 B.R. 121, 138 (Bankr.S.D.N.Y. 2000)(stating that "the requirements for 'cause' for dismissal for bad faith filing, on the one hand, and for relief from the stay for bad faith filing, on the other, are not substantively different, and bad faith has frequently been held to provide sufficient cause to warrant both types of relief.")

[13] The Court has considered, among other things, the Debtor's agreement reached with the United States Trustee, the timing of the Debtor's filings in relation to the §341(a) meeting of creditors, the short period between commencement and conclusion of the § 341(a) meeting of creditors, the limited information contained in the schedules, CO Acquisition's ability to effectively question the Debtor at the meeting of creditors held June 11, 2012, the reasons for the delayed filing, and the harsh consequences of dismissal as a sanction.

CONCLUSION

Based on the foregoing, the Court concludes that CO Acquisition has failed to demonstrate sufficient grounds to dismiss Copperas Creek's bankruptcy case for "cause." The Court will, therefore, deny the Motion to Dismiss and grant the Motion for Extension. Separate orders consistent with this Memorandum Opinion will be entered. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law entered pursuant to Rule 7052 and Rule 9014, Fed.R.Bankr.P.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 26, 2012

COPY TO:

**Don F Harris**
**James T. Burns**
Attorneys for Debtor
1120 Pennsylvania St, NE
Albuquerque, NM 87110

**Larry J. Montano**
Holland & Hart, LLP
Attorney for CO Acquisition Property III, LLC
110 N Guadalupe, Suite 1
Santa Fe, NM 87501

**Office of the United States Trustee**
PO Box 608
Albuquerque, NM 87103

13

Case 12-11839-j11    Doc 42    Filed 07/26/12    Entered 07/26/12 14:55:40 Page 13 of 13